**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARIA GATLIN | ) | |
| | ) | Case No. 1:17-cv- 06116 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Jury Trial Demanded |
| LINCOLNWAY PUBLIC SAFETY | ) | |
| COMMUNICATIONS CENTER | ) | |
| Defendant. | ) | |

**COMPLAINT**

NOW COMES Plaintiff MARIA GATLIN by and through her attorneys, O'Connor | O'Connor, P.C., and brings the following Complaint against Defendant LINCOLNWAY PUBLIC SAFETY COMMUNICATIONS CENTER (hereinafter "Lincolnway") and in support thereof states as follows:

**NATURE OF ACTION**

1. Plaintiff Maria Gatlin (hereinafter "Ms. Gatlin") brings this action to redress violations of the Americans with Disabilities Act (42 U.S.C. §12111 *et seq*.) and Illinois Workers' Compensation Act (820 ILCS 305/1 *et seq*.) arising from Lincolnway's revocation of its job offer to Ms. Gatlin.

2. Plaintiff seeks awards of compensatory damages, punitive damages, back pay and benefits, front pay and benefits, attorney's fees, costs, other monetary damages, other equitable and injunctive relief, and all other relief available under the aforemented laws.

## JURISDICTION AND VENUE

3. Count I is brought pursuant to The Americans with Disabilities Act 42 U.S.C. §12111 *et. seq*.; This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

4. Count II is brought pursuant to the Illinois Workers' Compensation Act. The Court has supplemental jurisdiction Plaintiff's Illinois state law claims pursuant to 28 U.S.C. § 1367.

5. Ms. Gatlin has exhausted all of her administrative remedies. She received her right to sue letter from the Equal Employment Opportunity Commission (hereinafter "E.E.O.C.") on May 25, 2017.

6. Venue is proper under 28 U.S.C. 1391(b) because the events giving rise to the claims alleged herein occurred within the Northern District of Illinois.

## GENERAL FACTUAL ALLEGATIONS

8. Ms. Gatlin was a police offer with the Village of Summit (hereinafter referred to as "Summit") from June 26, 1997 until July 2, 2013.

9. In December 2012, Ms. Gatlin went out on disability leave to treat her severe back pain. The back pain was caused by degenerative disc disease.

10. Ms. Gatlin underwent a double spine fusion surgery on April 10, 2013 to treat the degenerative disc disease.

11. On June 14, 2013, Ms. Gatlin was released back to work with a 20 pound lift restriction and no overhead activities by her spinal surgeon.

12. Summit's Chief of Police, Les Peterson, refused to allow Ms. Gatlin to return to work unless she had a full duty release.

13. On July 2, 2013, Summit terminated Ms. Gatlin via letter written by Les Peterson.
14. Shortly after her termination, Ms. Gatlin filed a charge of discrimination with the E.E.O.C. against Summit alleging disability discrimination.
15. On May 22, 2014, Ms. Gatlin filed suit against Summit and Les Peterson in the Northern District of Illinois District court, Eastern Division, case number 1:14-cv-03808.
16. In March 2104 Ms. Gatlin applied for a public safety dispatcher position at the Lincolnway Public Safety Communications Center ("Lincolnway").
17. Lincolnway required its applicants for this position to take an exam.
18. Ms. Gatlin had the highest score of all applicants at this time.
19. After the exam, Ms. Gatlin interviewed with Director Brad Veerman and Deptuy Director Janet Altobella.
20. Following an interview, Mr. Veerman asked Ms. Gatlin to fill out a written application. Ms. Gatlin turned in this written application on April 29, 2014.
21. The application asked if Ms. Gatlin had ever been "fired or asked to resign from job."
22. To this question, Ms. Gatlin responded "yes."
23. She went on to explain by saying "After having a double spin fusion surgery on 4/10/2013 I was not allowed to work light duty & was therefore terminated."
24. After submitting the application, Ms. Gatlin was offered the public safety dispatcher position by Mr. Veerman.
25. Ms. Gatlin was told that Lincolnway would be performing a background check on her.
26. After receiving the offer, Ms. Gatlin requested to meet with Mr. Veerman again.
27. Ms. Gatlin wanted to explain in greater detail about the circumstances of her separation from Summit.

28. Ms. Gatlin was especially concerned about what Summit would say about her separation because Summit contested her application for unemployment benefits. Summit said that Ms. Gatlin was terminated for "misconduct."

29. Ms. Gatlin's goal for meeting with Mr. Veerman was to make clear that she was not terminated for misconduct.

30. Mr. Veerman told Ms. Gatlin the circumstances of her termination were understandable and that everything would work out.

31. After the meeting, Ms. Gatlin received a training packet for an Emergency Medical Dispatch program and was advised to report on May 19, 2014.

32. Following this meeting, Lincolnway, through one Detective Giaccomo from Frankfort Police Department, contacted Detective Bob Mase at Summit Police Department to inquire as to why Plaintiff is no longer with Summit PD. Detective Giaccomo was directed to talk to either Defendant Peterson or Deputy Chief Kosmowski regarding the matter.

33. Upon information and belief, individuals at Summit informed Giaccomo and/or Veerman of Ms. Gatlin's EEOC charge and her potential lawsuit against Summit.

34. Upon information and belief, Veerman learned that Ms. Gatlin had a worker's compensation claim pending.

35. On May 12, 2014, Lincolnway revoked Ms. Gatlin's job offer.

36. On November 10, 2016, the jury in Ms. Gatlin's case against Summit returned a verdict in her favor finding that Summit failed to accommodate Ms. Gatlin and terminated her because of her disability.

**COUNT I**
**DISABILITY DISCRIMINATION: RETALIATION**
**AMERICANS WITH DISABILITIES ACT**

37. Paragraphs 1 through 36 are hereby restated and re-alleged as if fully set forth in this Count I.

38. Plaintiff engage in multiple forms of statutorily protected activities under the ADA when she filed an EEOC charge against Summit, communicated to Summit about her impending lawsuit against it, and by opposing an unlawful employment practice when she alleged disability discrimination for Summit's failure to accommodate her disability, its termination of her employment due to her disability, and other claims.

39. Defendant took discriminatory actions against Plaintiff when it revoked the job offer due her statutorily protected activities.

40. By conduct including, but not limited to that described above, Defendant retaliated against her in violation of her rights under the ADA.

41. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered and continues to suffer substantial losses in wages and benefits, other past and future pecuniary losses, great emotional distress, mental anguish, humiliation, and embarrassment.

**WHEREFORE**, Plaintiff Maria Gatlin seeks the following relief:

a. Declaration that Defendant has violated Plaintiff's rights under the ADA;

b. An award of all salary, wages, and benefits including, but not limited to: back pay, front pay, past and future pecuniary losses, and prejudgment interest;

c. An award of compensatory damages in an amount to be determined at trial;

d. An award of punitive damages in an amount to be determined at trial;

e. An award of the costs of this action and reasonable attorney's fees;

f. All other damages and relief, legal or equitable, authorized under the ADA; and

g. Such other and further relief as this Court may deem just and equitable.

**COUNT II**
**ILLINOIS WORKERS COMPENSATION ACT**
**RETALIATION AND INTERFERENCE**

42. Paragraphs 1 through 41 are hereby restated and re-alleged as if fully set forth in this Count II.

43. Plaintiff filed a workers compensation claim after her injury in December 2012.

44. When Plaintiff applied for the public safety dispatcher position, her workers compensation claim was still pending.

45. Defendant's actions are causally related to Plaintiff's injury at work and filing of a workers compensation claim.

46. Defendant's actions also interfered with Plaintiff's rights under the IWCA

47. Defendant took these actions in retaliation for Plaintiff exercising the rights afforded to her by the IWCA.

48. Defendant and its managers knew, and/or should have known that their actions against Plaintiff were in violation of his rights under the Act and the strong public policy of the State of Illinois. Nonetheless, Defendant and its managers willfully and wantonly disregarded Plaintiff's right and public policy of Illinois and retaliated against Plaintiff after he filed for workers' compensation.

**WHEREFORE**, Plaintiff Maria Gatlin seeks the following relief:

a. Declaration that Defendant Illinois has violated Plaintiff's rights under the ADA;

b. An award of all salary, wages, and benefits including, but not limited to: back pay, front pay, past and future pecuniary losses, and prejudgment interest;

c. An award of compensatory damages in an amount to be determined at trial;

d. An award of punitive damages in an amount to be determined at trial;

e. An award of the costs of this action and reasonable attorney's fees;

f. All other damages and relief, legal or equitable, authorized under the ADA; and

g. Such other and further relief as this Court may deem just and equitable.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Respectfully Submitted,
Maria Gatlin

By: ______________________
Kevin F. O'Connor

Dated: August 22, 2017

Kevin F. O'Connor (ARDC # 6300449)
Heewon O'Connor (ARDC # 6306663)
O'Connor | O'Connor, P.C.
110 E. Schiller St., Ste. 312
Elmhurst, IL 60126
Tel. 630-903-6397
Fax. 630-658-0336
kevin@oconnor-oconnor.com
heewon@oconnor-oconnor.com